# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-390 |
| EDWIN PAWLOWSKI | : | |

### GOVERNMENT'S RESPONSE
### TO DEFENDANT PAWLOWSKI"s MOTION TO DISMISS INDICTMENT

The United States of America, by its attorneys, Louis D. Lappen, Acting United States Attorney for the Eastern District of Pennsylvania, and Anthony J. Wzorek and Michelle L. Morgan, Assistant United States Attorneys for the District, hereby responds to defendant Pawlowski's motion to dismiss indictment. The defendant's chief claim is that the indictment must be dismissed because the government provided the grand jury with inaccurate and incomplete information, including material that Pawlowski's attorney characterizes as exculpatory.[1] The defect in Pawlowski's claim, however, is that it lacks factual support. Moreover, the clear weight of legal authority undermines his motion.  For these reasons and others outlined below, the Court should deny defendant's motion.

---

[1]     In addition to filing a motion to dismiss the indictment, counsel for the defendant held a news conference on November 2, 2017 to announce the filing of his motion.  This news conference may have run afoul of Rule 53.1(a) of the Local Criminal Rules for the United States District Court for the Eastern District of Pennsylvania.  Rule 53.1(a) provides: "a lawyer associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statements by any means of public communication, relating to that matter" and concerning an enumerated list of subjects, including "[t]he identity, testimony, or credibility of prospective witnesses," and "[a]ny opinion as to the accused's guilt or innocence or as to the merits of the evidence in the case." Rule 53.l(a)(D), (F).

A.    <u>**Background**</u>

On July 25, 2017, a federal grand jury returned a 55-count indictment that charged defendant Pawlowski and two others with an array of corruption-related offenses. According to the indictment, Pawlowski engaged in a wide-ranging pay-to-play scheme in which he accepted over $150,000 in campaign contributions in exchange for the use of his official position. The indictment set forth multiple examples in which Pawlowski steered municipal contracts to individuals and companies in exchange for contributions to his gubernatorial and U.S. Senate campaigns.

Following the return of the indictment, the government produced voluminous discovery to Pawlowski. The government included in the discovery transcripts of grand jury proceedings and audio recordings from Title III interceptions and conversations consensually recorded by cooperating witnesses. The grand jury transcripts and recordings of conversations with Pawlowski confirm the defendant's role in the pay-to-play scheme and, accordingly, support the grand jury's return of the 55-count indictment.

Evidence presented to the grand jury and provided in discovery also demonstrated that defendant Pawlowski was obsessively fearful that law enforcement might have been recording his conversations. This prompted him to have his office swept by a New Jersey company on two separate occasions in an attempt to locate listening devices and further prompted him to ask to have his car checked for listening devices. In some settings that had not been swept for devices, Pawlowski occasionally made self-serving declarations to Fleck and Ruchlewicz about the lawfulness of his campaign fund-raising conduct and simultaneously signaled to them with hand gestures, or discussed with them immediately thereafter, that the location of the conversation may be bugged. In addition, he used pre-paid, readily disposable

"burner" phones, and suggested to some city employees that they use private, rather than city, e-mail addresses so that their emails could not easily be retrieved.

**B.**   **Legal Context**

Defendant Pawlowski conspicuously ignores the controlling legal authority in this area in challenging the government's conduct before the grand jury.[2] The whole history of the grand jury institution and its role in our system of justice demonstrates that a challenge to the reliability or competence of the evidence supporting a grand jury's finding of probable cause will rarely be heard. See United States v. Williams, 504 U.S. 36, 54 (1992); United States v. Costello, 350 U.S. 359, 364 (1956); Bank of Nova Scotia v. United States, 487 U.S. 250, 261 (1988). Even when a defendant reasonably asserts that a prosecutor failed to present exculpatory evidence to a grand jury, a court may not dismiss an otherwise valid indictment. In United States v. Williams, 504 U.S. 36, 51 (1992), the Supreme Court stated that since the 18th Century in England, and since the Fifth Amendment was ratified in this country, the suspect under investigation has never been thought to have a right to have exculpatory evidence presented before the grand jury. In Kaley v. United States, 134 S. Ct. 1090, 1103 (2014), the Court repeated that a grand jury's finding of probable cause to think that a person committed a crime can be made reliably without an adversary hearing. It is --and has always been-- thought sufficient to hear only the prosecutor's side. Thus, the law does not require  the presentation of

---

[2]      The cases cited by the defendant for the proposition that a prosecutor may not make statements calculated to inflame the grand jury unfairly against the defendant contain such extreme facts that they are irrelevant to our fact pattern. In United States v. Hogan, 712 F.2d 757 (2d Cir. 1983) the prosecutor told the grand jury about the defendant's rumored involvement in two murders and called him a hoodlum. In United States v. Serubo, 604 F.2d 807 (3d Cir. 1979), the prosecutor attempted to link the defendant to organized crime without any evidentiary foundation and commented upon the veracity of witnesses before the grand jury.

exculpatory evidence, see Williams 504 U.S. at 51, and unambiguously allows the introduction

of hearsay alone, see Costello v. United States, 350 U.S. 359, 362-64 (1956).[3]

**C.**     **Discussion**

 1.     There is No Legal Support for Pawlowski's Motion To Dismiss the Indictment

        The United States Supreme Court's decisions in this area control this Court's

review of defendant Pawlowski's motion to dismiss the indictment. Even if his parsed and

contextually challenged discussion of the evidence raised a valid claim that exculpatory evidence

was not presented to the grand jury, it amounts to a challenge to the reliability of the evidence

before the grand jury. Such claims, even when couched as exculpatory evidence, do not support a

dismissal of an indictment.  Pawlowski's motion should be dismissed on this basis.

 2.     There is No Factual Support for Pawlowski's Claim of Government Misconduct

        Stripped of legal support for his motion to dismiss, Pawlowski's claim remains a

name-calling laced attack on government counsel's conduct that is devoid of factual support.  He

repeatedly asserts that certain statements to Fleck and Ruchlewicz that federal agents secretly

recorded are exculpatory.  In asserting this, defendant Pawlowski divorces the statements from

the context in which he made them.  For example, counsel points to a July 2, 2015 breakfast

meeting with Fleck in which Pawlowski said that he never engaged in quid pro quo actions with

the law firm Norris McLaughlin. Counsel fails to note, however, that Pawlowski made this

statement after rumors circulated that Fleck was cooperating with the FBI. Counsel also failed to

note that after making the statement, Pawlowski patted down Fleck in an effort to determine

---

[3]     As the government will argue, *infra*, it does not agree that the "evidence" cited by the
defendant was exculpatory.

4

whether Fleck was wearing a recording device. Infused with these circumstances and considered in context, counsel's claim that the statement is exculpatory loses its luster.

Other claims contained on defense counsel's laundry list of government misconduct—when infused with circumstances and considered in context—are hardly exculpatory as the defendant claims.

In addition, the defendant claims, Defense Motion at 3, that Agent Gleason's testimony that Michael Fleck admitted to pay-to-play schemes with defendant Pawlowski is "simply false" and the government knew that it was false. Of course, this remarkable statement by Pawlowski is belied by the fact that Michael Fleck pled guilty to conspiracy to commit extortion and bribery offenses while conspiring with Pawlowski. The Information to which Fleck pled guilty stated at paragraph 22 that Public Official #1, that is, defendant Pawlowski, and others, directly and through Michael Fleck and others, communicated to certain donors that they were expected to provide items of value, including campaign contributions, in return for certain past or prospective official actions in Allentown. This is a textbook definition of a "pay-to-play" scheme, to which Fleck pled guilty before this Court on April 21, 2016, over one year before the return of the Pawlowski indictment. Consequently, the defendant's argument that a deliberately false statement was presented to the grand jury is nonsense.

Pawlowski then claims, Defense Motion at 4, that Michael Fleck's initial reaction, while meeting with his staff, and after being confronted by the FBI, that Pawlowski didn't do anything wrong, in some way exonerates Pawlowski from all crimes. Again, counsel for the defendant makes this absurd claim without reference to the surrounding circumstances. By the time Fleck was confronted by the FBI in March 2015 and made this statement, the government already had over nine months of consensually intercepted conversations made by another

cooperator and approximately sixteen months of intercepted wiretap conversations implicating Pawlowski in a pay-to-play scheme. In addition, interceptions continued until July 2015. In large measure, it was Pawlowski's own words, intercepted in these conversations, his own actions, and his false statements to the FBI upon being confronted by them in July 2015, that established his involvement in the indicted pay-to-play scheme. Based upon this evidence, Fleck's statement has little, if any, value to the defendant's culpability.

The defendant next complains, Defense Motion at 7, that Special Agent Gleason's testimony on September 8, 2015, that at a meeting with Jonathan Saidel, defendant Pawlowski linked a contribution to obtaining additional work for the law firm Stevens and Lee conjured up false and misleading conclusions. Once again, the defendant's argument is belied by the facts and circumstances. Jonathan Saidel testified on August 18, 2015 that Pawlowski absolutely was making a direct tie between future work for Stevens and Lee and campaign contributions to his senate campaign. Consequently, the defendant's argument that Special Agent Gleason's characterization was false and misleading again is without support.

The defendant next complains, Defense Motion at 10, that because the government asked a witness whether he had checked to see if Spillman Farmer, a contract winner with the City of Allentown, had made contributions to defendant Pawlowski's campaign, but did not ask whether he had found any such contributions, that the government was trying to mislead the grand jury. As the defendant is well aware from the discovery provided in this case, when the government discovered campaign contributions made to Pawlowski at or near the time of the City of Allentown awarding a contract, it provided a summary of the contributions to the grand jury in a chart. No such chart was provided here, and no effort was made to mislead the grand jury.

Moreover, the lack of such contributions were irrelevant in this particular instance because Special Agent Curtis testified that Fran Dougherty was told by defendant Pawlowski that Spillman Farmer told him that they were going to be supportive of his senatorial campaign. (Testimony of Scott Curtis, November 22, 2016 at 6). Furthermore, as the grand jury heard, on June 2, 2015, Pawlowski called Joseph Biondo from Spillman Farmer and solicited a $2,700 contribution before the contract with Spillman Farmer was finalized. When Biondo hesitated to make such a payment, Ruchlewicz told Pawlowski, without objection, that he would call Biondo and tell him that he had to give money. Lastly, on July 1, 2016, after Pawlowski found out that Biondo said that he was not going to contribute money to Pawlowski at that time, Pawlowski directed Michael Fleck to call him, just one day before the contract was finalized. All of these efforts by Pawlowski to obtain a campaign contribution, leading up to the contract with the City of Allentown being signed, were the basis of the bribery solicitation charges found at Count 8 and the conspiracy charge found a Count 1. See Overt Acts 105-112.

The defendant next complains, Defense Motion at 13, that Michael Fleck stole $76,500 from defendant Pawlowski's campaign funds, that defense counsel notified the government of this theft, and that the "government never responded," thereby giving tacit approval to a major campaign theft. The defendant is once again wrong. The government responded to Mr. McMahon's letter of June 23, 2016 by an email on June 25, 2016,[4] and requested that Mr. Pawlowski make himself available for an interview, under the protection of a proffer letter, to allow the government to obtain more information about this incident. Mr. Pawlowski did not come in for an interview, and cannot be heard to complain now.

---

[4]     Mr. McMahon evidently forgets that he even thanked the government for its quick response.

The defendant also complains that money contributed to the defendant's Senate campaign by attorneys at Norris McLaughlin was also taken by Michael Fleck. The government is unaware of any formal complaint filed by the Norris McLaughlin attorneys concerning this money, and as indicated above, Mr. Pawlowski refused to proffer with the government concerning campaign withdrawals.

The defendant next complains, Defense Motion at 14, that an intercepted conversation of defendant Pawlowski, from May 20, 2015, at the Norris McLaughlin law firm, was not played for the grand jury. The defendant asserts that this conversation somehow exculpates Pawlowski's and makes his intent clear. The defendant isolates this conversation and does not mention the other conversations played for the grand jury, including the January 30, 2015 conversation in which Pawlowski, upon learning of Norris McLaughlin's reluctance to contribute to his senatorial campaign, tells Ruchlewicz that he's given Norris McLaughlin millions of dollars, that relative to other law firms they have given almost nothing to him, and that they will get nothing now. In a conversation on March 31, 2015, Pawlowski agreed with Ruchlewicz that it is important that all future City of Allentown work going to Norris McLaughlin goes through his co-defendant, attorney Scott Allinson, because Allinson controls the PAC money and when the firm puts money into the PAC, we can then request money. Ruchlewicz tells Pawlowski that it's very important that Allison gets the call so that when we call, there's money in the little fund. Additionally, in the May 20, 2015 conversation, after asking Norris McLaughlin to contribute $25,000, Pawlowski makes his intent clear in his own words. As he and Michael Fleck leave the law firm, they laugh that defendant Allinson did not ask for more legal work during the meeting, but that he will soon. Pawlowski says "You can see they liked my response to the (UI). You know what that means?  It means you guys gonna be doing

8

more legal work for the city." Contrary to the defendant's claim, Pawlowski's own words during this May 20, 2015 meeting make his pay-to-play intent crystal clear. Consequently, he was not prejudiced by the government not playing this tape before the grand jury.

Defendant Pawlowski, Defense Motion at 15-16 then improperly challenges the sufficiency of the evidence[5] found by the grand jury. He first complains that Ramzi Haddad was not called before the grand jury and then incorrectly states that "[a]gents reviewing the plea agreement of Mr. Haddad and some incorrect factual assertions were all this Grand Jury had to rely on" to return Counts 6, 38-39, and 48. The defendant is wrong. The transcripts presented in discovery show that the grand jury heard the words of defendant Pawlowski as he schemed to obtain campaign contributions from Haddad, heard Pawlowski promise Haddad to look into his city building inspection problems, and then heard testimony and saw emails indicating that Pawlowski contacted the supervisor for building inspections and told him to expedite Mr. Haddad's inspection. Similarly, during the same time period when he was soliciting campaign contributions, Pawlowski also expedited a review of zoning status with his city zoning supervisor.

In similar fashion, Defense Motion at 16-18, Pawlowski complains that other persons were not called before the grand jury. He alleges that, in his opinion, these persons could have best presented evidence as to the charged counts. The defendant is wrong. The recordings of Pawlowski's own words and the words of his co-conspirators that were played for

---

[5]     In United States v. DeLaurentis, 230 F.3d 659 (3d Cir. 2000), the Court said that unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence.  Federal Rule of Criminal Procedure 12(b)(2) authorizes dismissal of an indictment if its allegations do not suffice to charge an offense, but such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges.  Id. at 660-61.  See United States v. Sampson, 371 U.S. 75, 78-79 (1962).

the grand jury best demonstrated Pawlowski's intent to engage in pay-to-play and relate directly to the Northeast Revenue contract, the TEN contract, the Ciiber contract, and Dilworth Paxson.

Defendant Pawlowski, Defense Motion at 18, also mischaracterizes the import of a June 24, 2015 solicitation by Pawlowski of a campaign contribution from Joseph Biondo of Spillman Farmer. Pawlowski claims that this solicitation was innocent because the Spillman Farmer contract had been awarded two months before this date. But, as the defendant knows, the actual contract was only making its way through the city bureaucracy by June 24th, and was not signed by defendant Pawlowski until July 2, 2015, one day after Pawlowski is intercepted instructing Michael Fleck to call Biondo for a campaign contribution.

The defendant also is misleading regarding soliciting $20,000 from Mark Feller and Joseph Jacovini of the Dilworth Paxson law firm. Defense Motion at 18. When told by Jacovini that it was going to be difficult to raise the money for him,  Pawlowski responded that with all the money the law firm made from the City of Allentown during the past couple of years, it should be easy. At the end of the meeting, Pawlowski further sweetened the request for the $20,000 by suggesting that he may have additional work for the firm on a lease concession for the City of Allentown's golf course. After the meeting is over, Fleck said to Pawlowski: " Good job. Way to hammer it home. Can you believe the guy is giving you shit over twenty thousand dollars, over all the work you've given them."  Pawlowski responded: "Yeah, then he's talking about how he is going to play golf in Scotland. I felt like saying to him, you're going to play golf in Scot—you can afford to give me some, you know, help me out here."[6]

---

[6]    The defendant again inappropriately attempts to attack the sufficiency of the evidence as found by the grand jury concerning the contract awarded to McTish and Kunkel. While the defendant cites to one conversation heard by the grand jury theoretically in support of his argument, the grand jury considered all of the evidence in returning the counts concerning this

**D.**     **Any Claim Regarding Sufficiency of the Evidence is Improper at this Stage**

In this second part of his motion, Defense Motion at 23-49, the defendant alleges that the facts submitted to the grand jury are insufficient to make out the charges.

In considering a motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment and construe them in a light most favorable to the Government. United States v. Huet, 665 F.3d 588, 595 (2012);  United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990) (citing Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952)). "Evidentiary questions—such as credibility determinations and the weighing of proof—should not be determined at this stage." United States v. Bergrin,  650 F.3d 257, 265 (3d Cir. 2011) (internal marks and citation omitted) (emphasis added). For these reasons, a district court's review of facts set forth in the indictment is necessarily "limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged." Huet, 665 F.3d at 596. This analysis is limited to the four corners of the indictment. See, e.g., id. United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007).

Just as he did in Part One of his motion, Pawlowski fails here to provide the above-cited controlling Third Circuit case law for evaluating a motion to dismiss an indictment. Not only does Pawlowski not provide the standard that this Court must use, but he then violates that very standard by engaging in an inappropriate count-by-count factual summary of the grand

---

contract. It is just this type of post-indictment attack on the facts that the grand jury system was designed to avoid. See United States v. DeLaurentis, 230 F.3d 659 (3d Cir. 2000),

jury testimony, and never evaluates the four corners of the indictment, as he is required to do under the applicable case law.[7]

Looking only at the four corners of the indictment, as the Third Circuit says the Court must, and assuming all of those facts as true, again as the Third Circuit says the Court must, a jury clearly could find that Pawlowski committed the offenses for which he was charged. The indictment returned by the grand jury charges that defendant Mayor Pawlowski knew that he needed money for his statewide campaigns for Governor of Pennsylvania and for the United States Senate; that he personally solicited and used campaign operatives Michael Fleck and SR to solicit vendors who were doing business with the City of Allentown; that he communicated to vendors through Fleck and SR that they were expected to provide campaign contributions for past and prospective official action by Pawlowski and contracts with the City of Allentown; that Pawlowski bypassed  the contracting procedures in place in the City of Allentown and caused others to take official action favorable to those vendors who had provided or were expected to provide campaign contributions to Pawlowski; and that he traveled out of state to obtain promises of campaign contributions in return for contracts with the City of Allentown and for official action by Pawlowski. See Manner and Means, Paragraphs 32a-32f of the Indictment.

Specifically, the indictment charges that Pawlowski:

1.      accepted a stream of campaign contributions from Ramzi Haddad and agreed to work on City of Allentown building inspectors after Haddad agreed to raise $25,000 in May 2015 for Pawlowski. See Paragraphs 1-21 at Pages 10-13 of the indictment.

---

[7]      While the defendant entitles his motion a "motion to dismiss the indictment," he does not address, even in his inappropriate manner, the counts of the indictment not requiring an explicit quid pro quo, that is, the mail fraud, wire fraud, and false statement counts.

2.      accepted a stream of campaign contributions from S.K and Company #4 and solicited a campaign contribution from S.K., while company #4 was a bidder on the delinquent tax collection contract and before the contract was awarded; solicited M.P., another bidder on the tax collection contract before the contract was awarded; solicited Company #4 and S.K. for Eagles playoff tickets and a dinner while company #4 was a bidder on the delinquent tax collection contract and before the contract was awarded; told City of Allentown employees that he wanted Company #4 to win the delinquent tax collection contract; solicited money from Company #4 in February 2015; and told Company #4 that they needed to put a fundraiser together for him in June, 2015. See Paragraphs 22-52 at Pages 13-17 of the indictment.

3.      accepted a stream  of campaign contributions from Patrick Reagan and co-defendant James Hickey for Company #1, which was bidding on the City of Allentown's Street Lights contract; worked with other city employees to assure that a Request for Proposal favored Company #1; and told his campaign operatives that he wanted campaign contributions from James Hickey once the Street Lights contract was done. See Paragraphs 53-78 at Pages 17-20 of the indictment.

4.      traveled to New York and solicited J.R. for a $100,000 campaign contribution at the same time that he was promising J.R. a contract to do cyber work for the City of Allentown.  See Paragraphs 79-91 at Pages 20-21 of the indictment.

5.      accepted a stream of campaign contributions from Matthew McTish and caused the City of Allentown to award a contract to Matthew McTish outside of the normal city contracting process. See Paragraphs 92-104 at Pages 21-23 of the indictment.

6.       told Francis Dougherty that he wanted to give Company #8 a contract to work on the City of Allentown's pools; told Dougherty that Company # 8 had decided to give him financial help with his campaign; had S.R., his political operative, obtain a new reference for Company #8 when their original reference provided them a negative review; solicited a $2,700 campaign contribution; had his political fundraiser solicit a $2,700 campaign contribution just days before the Pools Contract was signed by Pawlowski. See Paragraphs 105-112 at Pages 23-24 of the indictment.

7.       agreed to funnel all City of Allentown contract work through co-defendant, attorney Scott Allinson, so that Allinson would get credit from his law firm and be able to, in turn, contribute to Pawlowski; solicited Allinson and another member of his law firm for $25,000 and told them that the City of Allentown might have more legal work for them. See Paragraphs 113-132 at Pages 25-27,

8.       complained to a representative of Law Firm #4 that although he had given them millions of dollars of work, they had not reciprocated with sufficient political contributions; told the representative of Law Firm #4 that it was still possible for Law Firm #4 to obtain work from the City of Allentown in the future; solicited a campaign contribution of $1,000 from a member of Law Firm #4. See Paragraphs 1-2 at Pages 37-38.

Defendant Pawlowski clearly misunderstands the purpose of a motion to dismiss the indictment. Far from confining himself to the facts found in the four corners of the indictment, he argues about what witnesses were called and not called before the grand jury, what intercepted conversations were heard by the grand jury and which were not, and ultimately makes what can only be considered a closing argument before the petit jury. All of this is, of

course, improper and irrelevant to the motion to dismiss the indictment.[8] As cited earlier,

evidentiary questions, such as credibility determinations and the weighing of proof, should not

be determined at this stage." United States v. Bergrin, 650 F.3d 257, 265 (3d Cir 2011).

**E.**      **Conclusion**

        For all the above reasons, the defendant's motion to dismiss the indictment should

be denied.

                                  Respectfully submitted,

                                  LOUIS D. LAPPEN
                                  Acting United States Attorney

                                s/Anthony J. Wzorek_____
                                ANTHONY J. WZOREK
                                MICHELLE L. MORGAN
                                Assistant United States Attorneys

Dated: November 15, 2017

---

[8]      The government does find it ironic that the defendant fails to provide the relevant case law to the Court in his motion and argues improperly in that motion while alleging that the government committed prosecutorial misconduct.

## **CERTIFICATE OF SERVICE**

I hereby certify that I have filed the above on the ECF system and therefore have

served the following:

Jack McMahon, Esq.
139 North Croskey Street
Philadelphia, PA 19103


s/Anthony J. Wzorek
ANTHONY J. WZOREK
MICHELLE L. MORGAN
Assistant United States Attorneys


Date: November 15, 2017

16